UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,                    Case No. 08-20453

        Plaintiff,                           Sean F. Cox
                                             United States District Judge

vs.

                                             Michael Hluchaniuk
STEVEN PAUL OSTIPOW,                          United States Magistrate Judge

        Defendant.

_____/

**REPORT AND RECOMMENDATION**
**MOTION TO QUASH SEARCH WARRANT (Dkt. 13)**

## I.    PROCEDURAL HISTORY

Defendant was indicted on August 27, 2008.  (Dkt. 3).  He was arrested and

brought to court for an initial appearance on October 28, 2008.  The government

moved for detention and a detention hearing was scheduled for October 30, 2008.

The arraignment and the motion for detention were heard on that day and

defendant was released on an unsecured bond with conditions.  (Dkt. 10).  The

present motion to quash was filed on December 8, 2008.  (Dkt. 13).  A response to

the motion was filed on December 29, 2008.  (Dkt. 15).  On February 4, 2009, the

motion was referred to the undersigned under 28 U.S.C. § 636(b)(1)(B).  (Dkt. 17).

An evidentiary hearing was held on February 27, 2009.  Defendant filed a

supplemental brief on March 9, 2009.  (Dkt. 19).  The government had been given until March 16, 2009, to respond to defendant's supplemental brief, but did not file a response.

## II.    DEFENDANT'S MOTION

Defendant states that search warrants were executed at a farmhouse near his residence on April 24, 2008, and at his residence, where he lives with his parents, on April 25, 2008.  The farmhouse search warrant contained a paragraph (¶ 3.C) alleging that, in late March of 2008, a confidential informant had informed the affiant, Saginaw County Sheriff's Detective John Butcher, that the informant had been inside the farmhouse in late March 2008, and had observed a marijuana grow operation in several rooms of the residence.  The paragraph also alleged that the resident of the farmhouse was Steven Ostipow and owner of the farmhouse was Gerald Ostipow who lived "down the road" from the farmhouse.

Defendant alleges that the affiant deliberately included false information in the affidavit or made statements in the affidavit with reckless disregard for the truth in that (1) the affidavit states the informant, the identity of which defendant believes he knows,  was invited into the farmhouse when in fact the informant illegally broke into the farmhouse, (2) the affiant omitted material facts (that the informant had broken into the farmhouse) and that, if they had been included, it

would have resulted in a finding of no probable cause for the search, and (3) the informant was a "police officer, or police agent and working at the [affiant's] direction when he broke into defendant's farmhouse."  Defendant also alleges that the informant was present during the execution of the search warrants and assisted the police officers in that process.  Defendant also argues that the court should conduct an *in camera* interview of the informant as part of the fact finding associated with deciding the motion.

The government's response to the motion was that the affiant did not intentionally include false information in the affidavit and did not make statements in the affidavit with reckless disregard for the truth.  The government contended that the informant is not the person defendant asserts is the informant and that it was not necessary to produce the actual informant for an *in camera* interview with the Court under the circumstances.

## III.   RELEVANT FACTS

On April 23, 2008, a search warrant was issued by a state judge for the use of a thermal imaging device (also known as a forward looking infrared, or FLIR, device) with respect to a residence at 3551 Allan Road, Owosso, Michigan.  The warrant was issued based on an affidavit submitted by Det. John Butcher of the Saginaw County Sheriff's Department.  The key paragraph in the affidavit detailed

information that a "reliable" informant had provided to Det. Butcher.  The

paragraph provided as follows:

> In late March 2008, a confidential informant advised me that he/she was inside the above described residence at which time he/she saw a marijuana growing operation in several upstairs bedroom [sic] and in the attic.  The marijuana being grown in the bedrooms were being grown in dirt but the marijuana being grown in the attic was in a hydroponic system.  A timer system related to the application of light and or heat and or water and or chemicals was in use in these areas.  The resident and or occupant of the above described address were identified as STEVEN OSTIPOW.  The CI also stated that GERALD OSTIPOW is the homeowner and lives down the road.  I have verified that the owner is the residence described above is GERALD OSTIPOW.  Michigan criminal history records establish that STEVEN OSTIPOW has been convicted of Use of Cocaine in Lansing in 2000 and Possession of Marijuana in Corunna in 2007.

 (Dkt. 13-3, pp. 1-3).

The purpose of the use of the thermal imaging device was to locate heat

sources in the house that would be consistent with high intensity lights commonly

used in marijuana grow operations.  *Id.*  The use of the thermal imaging device was

approved by the state court judge and its use resulted in a determination that heat

sources were present in the house, consistent with the allegation of a marijuana

grow operation.  That fact was combined with the information from a confidential

informant in an affidavit that the informant stated that he or she had been in that same residence.  The state judge authorized a search warrant for the residence and the warrant was executed on April 25, 2008.  (Dkt. 13-4).  Apparently a marijuana grow operation was found in the residence in the area indicated by the confidential informant.  A third search warrant was issued for 3996 Allan Road in Owosso, which is the residence of defendant's parents as well as defendant and located down the road from the 3551 Allan Road location where the marijuana grow operation was found.  (Dkt. 13-5).

Attached to defendant's motion was an affidavit that stated that on March 27, 2008, he "caught" a person at 3551 Allan Road coming out of the enclosed porch at about 11:30 p.m.  Defendant states that he believed the person was breaking into the home but the person told defendant that he had ran out of gas and was simply looking for a place to get some gas.  Defendant said there was no gas on the premises so he drove this person to his parent's residence where defendant's father obtained some gas, which was provided to the person and defendant drove him back to 3551 Allan Road and the person left.  Due to his suspicion, defendant wrote down the license number of the vehicle the person was in.  The next morning, defendant observed signs of forced entry into the premises and concluded that the person defendant had confronted on the premises the night before had

broken into the house.  Through some on-line research, defendant came to the

conclusion that the person who had been "caught" at 3551 Allan Road on March

27, 2008, was Antonio Escamilla who resided in Chesaning, Michigan.  Defendant

said he located a high school yearbook for Chesaning High School, for the school

year 1996-1997, and found a picture of Escamilla.  Defendant further claims that

this person participated in the execution of the search warrant at his parent's

residence on April 25, 2008.  (Dkt. 13-6).

An evidentiary hearing was held on February 27, 2009, with respect to

defendant's motion.  The first witness to testify was Det. Butcher, who testified

that he was the law enforcement officer who had contact with the confidential

informant, that the confidential informant was not Antonio Escamilla, that Det.

Butcher does not know Escamilla, that Miguel "Mike" Gomez, another detective

with the Saginaw County Sheriff's Department, was the only Hispanic appearing

person assisting in the execution of the search warrant, that Det. Gomez had

nothing to do with the case before the execution of the search warrant, and that he

was only there to provide assistance to the other officers.  Det. Butcher further

testified that no effort was made to conceal the identify of any of the raid officers

from defendant or his parents.

Det. Gomez testified that he knew Antonio Escamilla but had not spoken

Report and Recommendation
Defendant's Motion to Quash/Suppress
*U.S. v. Ostipow*; 08-20453

with him in approximately three years.  Gomez knew of Escamilla because

Escamilla was the son of a woman, Rebecca Gonzalez, who was the second or third

cousin of Det. Gomez's wife.  Det. Gomez denied speaking with Escamilla in

conjunction with defendant's investigation and Det. Gomez claimed he was only

involved in the execution of the search warrant because he happened to be

available that day and had no involvement in the investigation prior to that date.

Of the eight or nine officers that Det. Gomez said were present during the search,

Det. Gomez testified that he was the only one that was Hispanic or looked Hispanic

and that Antonio Escamilla was not present.  Det. Gomez further stated that he had

a limited role in the execution of the search warrant in that he recalled assisting in

the entry of the premises, conducting some search efforts and went to get lunch for

the other officers.  He did not recall "seizing" any evidence,[1] he did not recall what

evidence was seized and he did not recall taking anything out of the house.  When

a question was raised regarding why Det. Gomez's name did not appear on the

reports associated with the execution of the search warrant, the government

---

[1] It is the experience of the undersigned that "seizing" evidence is a term of art that refers to the common law enforcement practice where one officer, or a limited number of officers, will identify the location where an item of evidence was found and will take custody of that item under such circumstances where the individual who "seized" the evidence will be able to come to court on a later occasion and testify about where it was found.  While many officers may "search" a premises, a very limited number of officers will "seize" evidence.

Report and Recommendation
Defendant's Motion to Quash/Suppress
U.S. v. Ostipow; 08-20453

produced a document described as a "people sheet," admitted as Exhibit A, which included Det. Gomez's name as being present during the search.  Det. Gomez was also shown a picture, Exhibit 10, of what was represented to be the 1996-1997 yearbook photograph of Antonio Escamilla and Gomez testified he thought it was a photograph of "Tony."

Gerald Ostipow, defendant's father, testified and stated that he recalled an incident in which his son brought a person to the house late at night and said the person had run out of gas.  Mr. Ostipow said he observed this person for two or three seconds inside his son's vehicle that night and identified Exhibit 10 as a photograph of the person he had seen with his son that night.  The next morning, Mr. Ostipow stated he went to the residence at 3551 Allan Road and repaired a damaged door that led to the basement of the house.  He further testified that he was present when his house was searched on April 25, 2008, and that he observed a single Hispanic person with the group of officers executing the search warrant and he did not believe that the Hispanic person he observed was Miguel Gomez.  Mr. Ostipow stated that he observed the Hispanic person carrying firearms from the house during the search process.  On cross examination, Mr. Ostipow said the person who he was told had run out of gas never got out of the vehicle his son had driven him to the house in.  He also conceded that he had been inside the basement

of the house when he was fixing the door but later told a federal agent that he had not been inside the house in two years and, despite his belief someone had broken into the house at 3551 Allan Road, he never called the police to report the incident.

Royetta Ostipow, defendant's mother, also testified and stated that she was present during the execution of the search warrant at her residence on April 25, 2008. She testified that there was one Hispanic looking person present during the execution of the search warrant and that person was not Det. Gomez. She said the Hispanic person carried guns from the house and at some point asked another officer where "he" was, which Mrs. Ostipow believed was a reference to the whereabouts of someone else within the residence.

Defendant personally testified and stated that the person who had claimed to have ran out of gas at 3551 Allan Road on March 27, 2008, was the same person who defendant observed at the execution of the search warrant on April 25, 2008. This person, defendant stated, was the same person depicted in the yearbook photograph of Antonio Escamilla. Defendant contended that Det. Gomez was not present during the execution of the search warrant at his parent's house on April 25, 2008.

Defendant further testified regarding the events of March 27, 2008, and stated that he encountered a person coming out of the house at 3551 Allan Road

when he went there late at night in his pajamas.  Defendant claimed that he was

immediately suspicious of this person but, when the person said he ran out of gas,

he drove this person to his father's house to obtain gas.  The gas was obtained from

his father's polebarn and defendant drove the man back to 3551 Allan Road and

the man drove off but only after defendant had written down the license number of

the car.  Defendant observed evidence of the house being broken into,   when he

returned to the house the next day.  The evidence consisted of signs of forced entry

with respect to  the doors that led directly from the outside to the basement.

Defendant asked his father to help repair the damage to the doors.  Defendant

stated that he made no police report of the breaking and entering because nothing

was taken.

Regarding the execution of the search warrant on April 25, 2008, defendant

stated that he was moved to several different locations during the course of the

search warrant including a police car, the living room, and the kitchen.  He

observed a Hispanic male during the execution of the search warrant but that

person was not Det. Gomez.

On cross-examination, defendant said that during the events of  March 27,

2008, he felt he had to take the person to his father's house to get gas because the

person would not leave on his own.  He was shown pictures of the barn at 3551

Allan Road that depicted gas cans on the premises but denied there was gas in the cans.  He also admitted that he subsequently told officers that his father never came to the house because he did not want his father to see the marijuana growing there, but yet had asked his father to come to the house to repair the doors and conceded that his father would have been close to some of the marijuana in the house. Defendant claimed, however, that it could not have been seen.

## IV.   LEGAL STANDARDS

In 1978, the Supreme Court determined that if an affiant to a search warrant knowingly included false information in a search warrant, or made inaccurate statements with reckless disregard for the truth, and the remaining statements in the search warrant did not establish probable cause for the search, the evidence and fruits of the search would be excluded.  *Franks v. Delaware*, 438 U.S. 154, 156 (1978).  In that there is a presumption of validity associated with the issuance of a search warrant, a defendant challenging the accuracy of information in the affidavit must make a "substantial preliminary showing" that the affiant knowingly included false information or made statements in the affidavit with reckless disregard for the truth in order to warrant a hearing on the challenge.  *Id.* at 155-56.  Defendant bears the burden of proving, by a preponderance of the evidence,  that the affiant knowingly included false information in the affidavit or that a false statement was

made by the affiant with reckless disregard for the truth. *United States v. Zimmer, 14 F.3d 286, 288 (6th Cir. 1994)*. Confusion on the part of the affiant or an honest mistake is not sufficient. *United States v. Mick*, 263 F.3d 553, 564 (6th Cir. 2001). This analysis is focused on what the affiant believed to be true or should have known to be true, not necessarily on the objective accuracy of the information. "*Franks* recognizes that information an affiant reports may not ultimately be accurate, and is willing to tolerate such a result at that early stage of the process, so long as the affiant believed the accuracy of the statement at the time it was made." *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998).

The decision whether the government must disclose the name of an informant must be made by balancing "the public interest in protecting the flow of information against the individual's right to prepare [a] defense." *Roviaro v. United States*, 353 U.S. 53, 62 (1957). The prosecution ordinarily need not disclose the name of an informant when the defendant seeks the information solely to challenge the probable cause supporting the warrant. *McCray v. Illinois*, 386 U.S. 300, 310-14 (1967). The question of disclosure is left to the sound discretion of the trial judge. *United States v. Sharp*, 778 F.2d 1182, 1187 (6th Cir. 1985). Specifically in the context of a *Franks* challenge to a search warrant, the trial judge has discretion to determine what type of hearing is necessary to determine the

credibility of the affiant, including whether an *in camera* interview of the informant is necessary. *United States v. Giacalone*, 853 F.2d 470, 477 n. 1 (6th Cir. 1988).

## V.    ANALYSIS AND CONCLUSIONS

Defendant seeks to establish that the affiant in the search warrants for the thermal imaging device and for 3551 Allan Road included false information in the affidavit, either knowing it was false or stated with reckless disregard for the truth, for these search warrants. The alleged false information relates to the paragraph in the affidavit that recites that an informant was inside the residence in late March 2008 and observed a marijuana grow operation at certain locations within the residence. The informant also provided information about who resided in the residence and who owned the residence.

Defendant attempts to meet his burden of proof with respect to this claim by offering evidence that he "caught" a person coming out of 3551 Allan Road just before midnight on March 27, 2008. While defendant said that he was immediately "suspicious" of this person's intentions in being there at that time, defendant accepted the person's statement that he had ran out of gas and took the person to his father's house to obtain gas and then drove him back to 3551 Allan Road. This person, claimed by defendant to be Antonio Escamilla, apparently put

the gas in his vehicle and left the area, but not before defendant wrote down his license number.  The next morning, defendant discovered that a door to the basement at 3551 Allan Road had been forced open and defendant suspected the perpetrator was the person he had found at the premises the night before.  Defendant further claims that this person was present and assisted in the execution of the search warrants on April 25, 2008, at 3551 Allan Road and at his father's residence.

Even if the facts, as opposed to the inferences, that defendant asserts are true, they do not make out proof that the challenged statements in the search warrant affidavits were knowingly false.  If Antonio Escamilla was the informant for the affiant and had illegally entered the premises to obtain the information he later provided to the affiant, that does not prove that anything in the affidavit was false.  The affidavit merely says that the informant had been inside the premises in late March and had seen the marijuana grow operation.  Nothing in the affidavit describes how the informant gained entry to the premises.  If the informant had illegally entered the premises on his own without the knowledge of a law enforcement officer, the fact that the information was subsequently used in the affidavit would not be improper.  Information obtained by a private individual, not acting at the direction of a law enforcement officer, can be used by the law

enforcement officer to further the investigation. *United States v. Robinson*, 390 F.3d 853, 871-72 (6th Cir. 2004). The Fourth Amendment limits the conduct of a government official, not private individuals acting on their own. *Id.*

In order to reach the conclusion that defendant advocates, an inference must be drawn that, because Antonio Escamilla was on the premises of 3551 Allan Road on March 27, 2008, he must be the person who broke into the residence. A second inference would then have to be drawn that Escamilla was the informant who told the police about his observations inside the premises and then a third inference, that Escamilla was acting as an agent of the police when he broke in, would have to be drawn in order to reach the conclusion that the affiant included false information in the affidavit.

Defendant's problem with this series of inferences is that the proofs he offers are simply not persuasive. Defendant's testimony that he encountered a person just before midnight coming out of an enclosed porch leading to the main entrance of the residence and was immediately suspicious of the person but took him, in his vehicle, to his father's residence is not credible. Common sense indicates that a person facing someone who is suspected of engaging in significant criminal conduct would either call the police or, at least, stay sufficiently away from the person so as to protect one's self from harm. It is difficult to imagine that

a person would invite a suspected criminal into his car and then drive that

suspected criminal to the house of his parents, placing them at risk along with

himself.  Defendant's explanation for going to the residence at that hour of the day,

in his pajamas, also did not make sense.  Although suspicious, defendant did

nothing that evening to determine if someone broke into the house but concludes,

on finding evidence of forced entry the next morning, that the person who broke

into the residence must have been the person he encountered the night before.

Although he has the vehicle license number from the suspected criminal, he says

he did not call the police because nothing was taken.  Gerald Ostipow, defendant's

father and owner of the house that was allegedly broken into, also did not attempt

to call the police although, according to his testimony, he fixed the damage to the

doors the following morning.  Gerald Ostipow would not have been inhibited from

calling the police as a result of the marijuana grow operation in the house because,

according to him, he did not know anything about the marijuana being grown in

the house because he had not been inside the house for over a year so his

explanation for not calling the police is not credible.

Defendant also claims that the person he saw at 3551 Allan Road on March

27, 2008, was present and assisted with the execution of the search warrants on

April 25, 2008.  Defendant suggested that he was moved to several different

locations during the execution of the search warrants arguably to prevent him from seeing the person who had been at the residence on March 27, 2008.

The government and the defendant agree that there was only one Hispanic looking officer or person present during the search warrant execution.  The government claimed that the Hispanic member of the search team was Det. Gomez. Det. Butcher, the affiant for the search warrants, testified that Det. Gomez was the only Hispanic looking member of the search team and that Det. Gomez had been recruited at the last minute to participate in the search of the premises, having no involvement in the investigation up to that point and none after the search, because extra officers were needed.  Det. Gomez also testified that he was the only Hispanic looking member of the search team, that he had not been involved in the case until shortly before the execution of the search warrants, and that he played a limited role in the search of the premises.

It is apparently defendant's position that both Detectives Butcher and Gomez are lying when they say Det. Gomez was part of the search team and Escamilla was not.  However, Butcher and Gomez both testified, were subject to cross examination, and gave consistent testimony regarding the circumstances of the search and Det. Gomez's presence at the search.  Det. Gomez acknowledged a somewhat distant family relationship with Escamilla but that "coincidence" does

not make the testimony of Detectives Butcher and Gomez incredible.  Rather, it is the position of defendant, as presented through testimony and argued by counsel, that is incredible.  The notion that the police would direct someone to break into a suspect's residence to make observations and then knowing that the person was "caught" by the suspect, later bring that person to the site of the search, expecting that the suspect would be there and likely see the person, is extremely hard to believe.  If the police officers had been worried about defendant seeing the person who allegedly had broken into the residence, they would not have brought the person to the site to begin with and, if he were present, they would most likely have disguised his identity through the use of a mask or some similar means, not by merely moving defendant from place to place in the hopes that he would not encounter the informant.  Defendant has a strong self-interest in this matter and his credibility is negatively affected by that interest.  Defendant's parents, who both testified that Det. Gomez was not the Hispanic looking person on the search team, obviously have sympathy with defendant's plight and would clearly have been traumatized by the presence of numerous law enforcement officers in their house during the execution of the search warrant causing their perception of the events to be questionable.  Under these circumstances, their identification, or lack of identification, of the officers present during the search does not carry too much

weight.  Defendant has not carried his burden of proof with respect to establishing that the affiant knowingly included false information in the affidavit or made false statements with reckless disregard for the truth.

Defendant requests that the court conduct an *in camera* interview of the informant to verify  the information that was attributed to an informant.  Defendant does not cite any authority for this request.  It is clear that a judge does have the discretion to conduct an *in camera* interview of a confidential informant under circumstances similar to the present.  *Giacalone, supra.*  However, case law does not seem to provide much in the way of a guideline as to when such an interview should be conducted by the judge.

The *Franks* court appeared to contemplate that extended hearings involving a "large-scale commitment of judicial resources" would not normally result from a challenge to the truthfulness of the affiant.  *Franks*, 438 U.S. at 170.  By creating a "sensible threshold" of a "substantial preliminary showing" that false information was intentionally or recklessly included in the affidavit, the Supreme Court believed that "many claims will wash out at an early stage."  *Id.*  Even though the Court suggested that full blown hearings would not often result in these situations, they did not limit the ability of a judge to conduct any particular hearing the judge felt necessary.

Because the focus of this type of inquiry is the truthfulness of the affiant, rather than the informant, the Court noted "we need not decide, and we in no way predetermine, the difficult question whether a reviewing court must ever require the revelation of the identity of an informant once a substantial preliminary showing of falsity has been made." *Id.* From this observation, one could reasonably determine that a defendant would have to make, at a minimum, a "substantial preliminary showing" that the affiant knowingly or recklessly included false information in the affidavit before a court should consider making any direct inquiry from a confidential informant. The requirement of a heightened showing before disclosure of an informant is based in part on the public's interest in maintaining the flow of information from informants to law enforcement officials and the concern that disclosure would discourage such a flow of information. *United States v. Frazier*, 1988 WL 90912 (6th Cir. 1988). Discouraging the flow of information in this manner could also result from conducting an *in camera* interview of an informant. *United States v. Harris*, 531 F.3d 507, 516 (7th Cir. 2008).

Merely alleging that a search warrant affidavit contains false information does not warrant an *in camera* examination of the informant. *United States v. Rodriquez-Suazo*, 346 F.3d 637, 648 n. 8 (6th Cir. 2003). Similarly, a denial by

the defendant of conduct attributed to him in the affidavit is not a sufficient

showing of falsity on the part of the affiant to justify an *in camera* interview of the

informant.  *United States v. Caldwell*, 2004 WL 2491120 (6th Cir. 2004).  In the

present case, the affiant testified and was subject to vigorous cross-examination by

defense counsel.  In light of all the evidence, the undersigned finds the affiant

credible.  No further evidence, including an *in camera* interview with the

informant, is necessary to determine the affiant's credibility.  The affiant's

credibility is really the only issue that must be resolved following a *Frank's*

challenge to the search warrant.  Defendant's proofs do not establish, by a

preponderance of the evidence, that the affiant knowingly or recklessly made false

statements in the affidavit, nor did they rise to the level of a "substantial

preliminary showing" of falsity such that an *in camera* interview of the informant

was appropriate.

## VI.   RECOMMENDATION

For the above reasons, the undersigned **RECOMMENDS** that defendant's

motion be **DENIED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 10 days of service,

as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file

specific objections constitutes a waiver of any further right of appeal.  *Thomas v.*

*Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d

505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others

with specificity will not preserve all the objections a party might have to this

Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931

F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829

F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections

must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 10 days after service of an

objection, the opposing party must file a concise response proportionate to the

objections in length and complexity.  The response must specifically address each

Report and Recommendation
Defendant's Motion to Quash/Suppress
*U.S. v. Ostipow*; 08-20453

issue raised in the objections, in the same order, and labeled as "Response to

Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that

any objections are without merit, it may rule without awaiting the response.

Date: April 15, 2009

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on April 15, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the following Craig F. Wininger, AUSA and Thomas M. Loeb, Attorney at Law, and I certify that I have either hand delivered/mailed by United States Postal Service the paper to the following non-ECF participants: not applicable .

s/James P. Peltier
Courtroom Deputy Clerk
U.S. District Court
600 Church Street
Flint, MI 48502
(810) 341-7850
pete_peltier@mied.uscourts.gov

Report and Recommendation
Defendant's Motion to Quash/Suppress
*U.S. v. Ostipow*; 08-20453